## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD GRAZIANO, | : | Civil No. 1:23-CV-00947 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion to amend the complaint and a proposed

amended complaint filed by Edward Graziano ("Plaintiff"), an inmate previously

housed at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-

Camp Hill").[1]  (Docs. 26, 28.)  The court will grant Plaintiff's motion and file the

proposed amended complaint.  Doing so renders Defendants' motion to dismiss

moot.  The court will also screen the amended complaint pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) and dismiss it in part.

### BACKGROUND

Plaintiff initiated this action in June of 2023 by filing a complaint under 42

U.S.C. § 1983.  (Doc. 1.)  This complaint named sixteen defendants and raised an

Eighth Amendment deliberate indifference claim, a negligence claim, a breach of

duty claim, and an intentional infliction of emotional distress claim premised on

---

[1] Plaintiff is currently housed at SCI-Huntingdon.  (Doc. 27.)

the Department of Correction's ("DOC") and SCI-Camp Hill's implementation of the COVID-19 protocols.

The court served the complaint on the sixteen defendants, and fifteen filed a waiver of service. (Doc. 11.) These same fifteen defendants filed a motion to dismiss on August 3, 2023. (Doc. 12.) After multiple motions for an extension of time, Plaintiff filed a motion for leave to amend his complaint, a brief in support, and a proposed amended complaint on December 7, 2023. (Docs. 25, 26, 28.)

The amended complaint is 92-pages long and names the following twenty-one (21) defendants: (1) John Wetzel ("Wetzel"), former Secretary of the DOC; (2) Tom Wolf ("Wolf"), former Governor of Pennsylvania; (3) George Little ("Little"), former Acting Secretary of the DOC; (4) Laurel R. Harry ("Harry"), current Secretary of the DOC and at all relevant times the superintendent/Facility Manager at SCI-Camp Hill; (5) Michael Gourley ("Gourley"), Deputy Superintendent for Facility Management at SCI-Camp Hill; (6) William Nicklow ("Nicklow"), Deputy Superintendent for Centralized Services at SCI-Camp Hill; (7) Lindsy Kendall ("Kendall"), Deputy Superintendent for Diagnostic Services at SCI-Camp Hill; (8) Renee Zobitne ("Zobitne"), Major of the Unit Managers/Corrections Officer 5 at SCI-Camp Hill; (9) Randy Evans ("Evans"), Major of the Guards/Corrections Officer 5 at SCI-Camp Hill; (10) Tonya Heist ("Heist"), Corrections Superintendent Assistant/Facility Grievance Coordinator at

SCI-Camp Hill; (11) Deborah Alvord ("Alvord") Administrator Officer at SCI-Camp Hill; (12) Ross Miller ("R. Miller"), Unit Manager of I-Block (the "unvaccinated unit") at SCI-Camp Hill; (13) Erin Miller ("E. Miller"), Corrections Counselor 2 at SCI-Camp Hill; (14) Beth Herb ("Herb"), Corrections Health Care Administrator at SCI-Camp Hill; (15) Elicia Stein ("Stein"), Licensed Psychologist Manager at SCI-Camp Hill; (16) Melissa Howdyshell ("Howdyshell"), Psychology Service Specialist at SCI-Camp Hill; (17) Theodoor Voorstad, ("Voorstad"), a medical provider contracted with Wellpath at SCI-Camp Hill; (18) Joe Silva ("Silva"), Director of Bureau of Health Care Services of the DOC; (19) Alison Beam ("Beam"), Acting Secretary of the Department of Health of Pennsylvania; (20) Kevin Wanga ("Wanga"), Registered Nurse Practitioner at SCI-Camp Hill; and (21) Emily Boone ("Boone"), Psychology Services Specialist at SCI-Camp Hill.  (Doc. 26, pp. 2–4.)[2]

This extensive amended complaint challenges the DOC's and SCI-Camp Hill's implementation of COVID-19 protocols at all levels from the actions of the Governor of Pennsylvania down to the staff Plaintiff interacted with at SCI-Camp Hill.  (Doc. 26.)  In August of 2021, Defendant Wetzel directed all State Correctional Institutions to house unvaccinated inmates separately from vaccinated inmates.  (*Id.*, p. 9.)  Plaintiff was informed that unvaccinated inmates would be

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

separated from vaccinated inmates and housed in a designated housing unit.  (*Id.*)

Additionally, Plaintiff was informed that unvaccinated inmates would be restricted

from all communal areas outside the unvaccinated unit including medical, chapel,

school, library, law library, visiting room, gymnasium, barber shop, dining hall,

and main yard.  (*Id.*)  Plaintiff alleges that on August 3, 2021, he refused to be

vaccinated against COVID-19 based on his religious beliefs as a practicing

Christian, the fast-track status of the vaccines, and the lack of data about their

long-term side effects.  (*Id.*, pp. 8, 10.)  On August 6, 2021, Plaintiff was moved to

the unvaccinated unit.  (*Id.*, p. 11.)  The remainder of the complaint focuses on

Plaintiff's complaints with the COVID-19 protocols in the unvaccinated unit

including lack of access to private medical treatment, use of reusable trays for

meals, lack of cleaning of the telephones, lack of Plexiglas at the cells, the bolting

shut of cell windows, poor cell ventilation, plumbing issues, and staff members not

wearing masks and not adhering to enhanced screening.  (*Id.*, pp. 12–25.)

Plaintiff alleges that at the end of December 2021 he began to experience

symptoms of COVID-19.  (*Id.*, p. 43.)  Plaintiff alleges that he was seen by

Defendant Voorstad in a "cell-side" appointment.  (*Id.*)  When Plaintiff asked to be

seen in private, Defendant Voorstad informed him that he was instructed by

Wellpath and Defendant Herb to treat unvaccinated inmates "cell-side" and

informed Plaintiff that if he wanted private treatment, he could choose to be

vaccinated.  (*Id.*)  Plaintiff alleges that Defendant Voorstad did not treat his symptoms.  (*Id.*)  Plaintiff was tested for COVID-19 on January 10, 2022 and was notified that he tested positive on January 11, 2022.  (*Id.*, p. 44.)  Plaintiff alleges that the positive test results caused him to become suicidal and self-harm.  (*Id.*, pp. 44–45.)  On January 24, 2022, Plaintiff alleges that Defendant Voorstad informed him that there was no treatment for his COVID-19 symptoms.  (*Id.*, p. 45.)  Plaintiff alleges that he continues to suffer from symptoms of "long COVID."  (*Id.*, p. 46.)  Plaintiff alleges that no medications have relieved his symptoms.  (*Id.*, pp. 45–46.)

Plaintiff alleges that he has been diagnosed with persistent depressive disorder, adjustment disorders with mixed anxiety and depressed mood, anti-social personality disorder, asthma, hypertension, headaches, sinusitis, osteoarthritis, traumatic arthropathy of the left shoulder, chronic pain, and other health issues. (*Id.*, pp. 5, 7–8.)

Plaintiff alleges that he repeatedly complained to staff at SCI-Camp Hill about the COVID-19 protocols and "they took retaliatory action against him." (*Id.*, p. 37.)

On April 4, 2022, SCI-Camp Hill ended its COVID-19 restrictions, including the separate housing of vaccinated and unvaccinated inmates. (*Id.*, p. 62.)

Additionally, Plaintiff alleges that on September 7, 2022, he lost his single cell status and was housed with another inmate.  (*Id*., pp. 65–66.)  He alleges that this exacerbated his mental health symptoms and resulted in a self-harm and a misconduct.  (*Id*., pp. 66–68.)  He also alleges that after April 4, 2022, the timing of the medical line changed and resulted in him not getting his medications when needed.   (*Id*., pp. 62–63.)

Plaintiff brings an Eighth Amendment deliberate indifference/failure to protect[3] him from COVID-19 and from self-harm by following and not following the COVID-19 protocols enacted by the DOC and implemented at SCI-Camp Hill. (Doc. 26.)  He also implies a First Amendment violation in being refused access to religious celebrations because he was unvaccinated and retaliatory activities for his questions about COVID-19 protocols.  (*Id*.)  Plaintiff also raises an Eighth Amendment deliberate indifference/failure to protect claim regarding his mental health following the loss of his single cell status in September of 2022 and the timing of the medication line after the COVID-19 protocols were lifted.  (Doc. 26.)

The court will now screen the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[3] While Plaintiff characterizes deliberate indifference and failure to protect as two separate claims, they are addressed under the same analysis pursuant to the Eighth Amendment.

**JURISDICTION AND VENUE**

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §

1331, which allows a district court to exercise subject matter jurisdiction in civil

cases arising under the Constitution, laws, or treaties of the United States.  Venue

is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at SCI-Camp-Hill, in Cumberland County, Pennsylvania, which is

located within this district.  *See* 28 U.S.C. § 118(b).

**STANDARD OF REVIEW**

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss" an in forma

pauperis case "at any time if the court determines that . . . the action . . . fails to

state a claim upon which relief may be granted[.]"  The legal standard for

dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915 is

identical to the legal standard used when ruling on Fed. R. Civ. P. 12(b)(6) motions

to dismiss.  *See Grayson v. Mayview State Hosp*., 293 F.3d 103, 109-10 & n.11 (3d

Cir. 2002).

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(6), the court must accept all well pleaded allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).  The pleadings of self-represented plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d. Cir. 2011).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## DISCUSSION

### A. Claims Arising After April 4, 2022 Are Improperly Joined and Will Be Dismissed Without Prejudice.

A plaintiff may not bring unrelated claims against unrelated parties in a single action. *See* Fed. R. Civ. P. 18(a); 20(a)(2).  A plaintiff may bring a claim against multiple defendants so long as (1) the claims arise out of the same transaction or occurrence, or series of transactions and occurrences; and (2) there are common questions of law or fact. *See* Fed. R. Civ. P. 20(a)(2).  Courts have broad discretion in applying Fed. R. Civ. P. 20 to reduce inconvenience, delay, and

added expense to the parties and to the court, and to promote judicial economy.

*Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009).  However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. *See, e.g., Pruden v. SCI Camp Hill*, 252 Fed.Appx. 436 (3d Cir. 2007) (nonprecedential).

Here, Plaintiff attempts to bring constitutional challenges against Defendants R. Miller, E. Miller, Grimes, Wanga, Stein, Herb, and Howdyshell stemming from the timing of the medication distribution following the removal of the COVID-19 protocols on April 4, 2024.  (Doc. 26, pp. 62–63.)  He also raises claims against Defendants Stein, Wanga, Howdyshell, Boone, R. Miller, E. Miller, Harry, Nicklow, Gourley, Kendall, Heist, Herb, Alvord, Evans, Zobitne, Wetzel, Little, and Wolf premised on the loss of his single cell status in September of 2022 and a resulting violent encounter with an assigned cell mate, self-harm, and a misconduct.  (Doc. 26, pp. 65–71.)  The timing of the medication distribution and his loss of single cell status are unrelated to the majority of the 92-page complaint, which focuses on the DOC and SCI-Camp Hill's response to the COVID-19 pandemic.  The COVID-19 protocols ended at SCI-Camp Hill on April 4, 2022. (*Id.*, p. 62.)  Therefore, any claims associated with facts arising after April 4, 2022 will be dismissed without prejudice to Plaintiff raising them in a separate action.

## B. Plaintiff's Eighth Amendment Claim Based on the DOC COVID-19 Protocols Will Be Dismissed.

Plaintiff dedicates the majority of his 92-page complaint to the COVID-19 protocols, specifically arguing that the DOC protocols put in place at SCI-Camp Hill were not adequate to protect those who chose not to be vaccinated.  (Doc. 26.)[4] He simultaneously complains that the protocols put into place resulted in additional constitutional violations.  Plaintiff makes a generic claim of failure to protect against COVID-19 against several Defendants by including their name in the section heading, but failing to allege any facts that demonstrate personal liability. (*Id*., p. 12.)  Plaintiff brings a failure to protect claim against several Defendants based on the theory of respondent superior.  (*Id*., pp. 29–30.)  Plaintiff brings a failure to protect claim against several Defendants for refusing his multiple requests for protocols that went beyond DOC policy.  (*Id*., pp. 35–37.)  Plaintiff brings a deliberate indifference claim against several Defendants based on the COVID-19 protocols resulting in restricted access to mental health care through refusals to transfer to housing units where treatment could be provided, and refusals to treat him in private.  (*Id*., pp. 53, 55, 59–61.)  Such claims cannot survive screening.

---

[4] The court has attached a chart summarizing the claims associated with the COVID-19 protocols as an appendix.

First, the court acknowledges that prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

However, courts in the Third Circuit have repeatedly rejected inmate claims based on exposure to COVID-19 where the record demonstrated that the state correctional institution followed mitigation policies and procedures adopted by the DOC. *See e.g., Engelund v. Doll*, 2020 WL 1974389, at * 11 (M.D. Pa. Apr. 24, 2020) ("it cannot be said that Respondents have been deliberately indifferent to Petitioners' health, safety, or medical needs" because, "[a]lthough COVID-19 presents a serious medical issue, as detailed above, the facilities have taken significant steps to curb the introduction or spread of COVID-19 and to contain and treat those infected with the virus"); *Allen v. Wetzel*, 2021 WL 2254997, at *7 (M.D. Pa. June 3, 2021) (DOC policies mitigating spread of COVID-19 sufficient to prevent deliberate indifference claim where Plaintiff contracted COVID-19 but did not experience any serious symptoms). In rejecting such claims, courts have

frequently taken judicial notice of the DOC's mitigation policies and procedures because they are publicly available on a government website. *See Allen*, 2021 WL 2254997, at *6 (taking judicial notice of the DOC's COVID-19 mitigation policies). *See also Bevins v. Kauffman*, 2021 WL 322168, at *1 (M.D. Pa. Feb. 1, 2021) (noting that "DOC has provided publicly available information regarding its response to the COVID-19 pandemic").  Courts have observed that "[a] review of these steps suggests that DOC officials . . . have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population . . . ." *Bevins*, 2021 WL 322168, at *5.

Thus, an inmate's Eighth Amendment claim arising out of his contracting COVID-19 will fail as a matter of law based on the DOC's COVID-19 mitigation policies and procedures absent factual allegations that prison officials disregarded or materially deviated from them. *See Williams v. PA. Dep't of Corr.*, 2023 WL 2655406, at *13 (W.D. Pa. Feb. 2, 2023), report and recommendation adopted sub nom. *Williams v. PA Dep't of Corr.*, 2023 WL 2652298 (W.D. Pa. Mar. 27, 2023) (holding that inmate's second amended complaint failed to state an Eighth Amendment claim where it included "no factual allegations to support that any DOC Defendant deviated materially from any DOC COVID-19 mitigation protocols").  Therefore, any Eighth Amendment Claim arising out of the DOC's

policy and SCI-Camp Hill's following of that policy will be dismissed with prejudice.

This dismissal includes Plaintiff's claims that he was not provided adequate mental health treatment because of the COVID-19 protocols. "Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987) ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation."). The complaint demonstrates that Plaintiff was provided mental health treatment, as he was diagnosed by with mental health conditions on December 27, 2021. (Doc. 26, p. 60.) He also states that he reported his

symptoms to several mental health providers, was provided medication, and at one point was placed in a psychiatric observation cell.  (Doc. 26, p. 56–61.)

He appears to take issue with the fact that his care was not provided in the medical bay and was instead cell-side.  (*Id*., pp. 58–59.)  However, it was his unvaccinated states that made him ineligible for the treatment he requested.  (*Id*.)  Going unvaccinated was Plaintiff's decision.  Therefore, any Eighth Amendment claim resting on the ground that Plaintiff's mental health was not treated during his time in the unvaccinated unit is nothing more than a disagreement about treatment.  Treatment was provided.  Additional treatment options were available.  Plaintiff made a choice to not participate in those additional treatment options by refusing vaccination. Therefore, just because Plaintiff did not receive the treatment in the manner he thought best during the pandemic, that does not give rise to an Eighth Amendment claim.

Therefore, all Eighth Amendment claims stemming from the implementation of COVID-19 protocols will be dismissed with prejudice.

### C. Plaintiff's Eighth Amendment Claims Based on the DOC Defendants Disregarding COVID-19 Policies Will Not Be Dismissed.

Plaintiff also alleges that the DOC Defendants personally disregarded DOC COVID-19 mitigation protocols.  (Doc. 26.)  Specifically, he claims that Defendants R. Miller, E. Miller, and Howdyshell used personal masks that they regularly wore down below their noses and mouths when they had direct contact

with vaccinated and unvaccinated inmates, including Plaintiff.  (*Id.*, pp. 26–27.)  Furthermore, he alleges that the plumbing and ventilation were not consistent with DOC policy and he informed Defendant R. Miller of that concern.  (*Id.*, p. 32.)

The Court of Appeals for the Third Circuit has found similar allegations sufficient to state an Eighth Amendment claim.  In *White v. Wetzel*, 2022 WL 3273807 (3d Cir. 2022), the plaintiff alleged supervisory prison personnel ignored "the Center for Disease Control guidelines for social distancing by housing inmates in an 'open block' dormitory," despite the fact that they "knew how dangerous the open housing unit was ...". 2022 WL 3273807, at *1.  Vacating the District Court's order dismissing the plaintiff's complaint, the Court of Appeals concluded that the allegation that prison personnel failed to comply with CDC guidelines, despite having been informed of the noncompliance by the plaintiff, was sufficient to state an Eighth Amendment claim.  *Id.* at *2.  Plaintiff's analogous allegations in this case are likewise sufficient to survive a motion to dismiss.

Plaintiff also makes general allegations that the DOC's policy for enhanced screening was not followed at SCI-Camp Hill.  (Doc. 26, pp. 14–19.)  However, he fails to demonstrate any personal involvement on the part of any Defendant in failing to comply with the enhanced screening requirements implemented by the DOC.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).  Without alleged personal involvement on the part of any Defendant, the Eighth Amendment claim that DOC enhanced screening protocols were violated will be dismissed without prejudice.

### D. Plaintiff's Eighth Amendment Claim Against Defendant Beam for Refusing to Prioritize COVID-19 Vaccines for PSCOA Members Will Be Dismissed With Prejudice.

Plaintiff alleges that Defendant Beam rejected the request by the Pennsylvania State Corrections Officers Association ("PSCOA") in January of 2021 to have its members prioritized when deciding how to prioritize vaccination disbursement.  (Doc. 26, p. 38.)

As set forth above, an inmate's Eighth Amendment claim arising out of his contracting COVID-19 will fail as a matter of law based on the DOC's COVID-19 mitigation policies and procedures absent factual allegations that prison officials

disregarded or materially deviated from them.  *See Williams*, 2023 WL 2655406, at

*13 (holding that inmate's second amended complaint failed to state an Eighth

Amendment claim where it included "no factual allegations to support that any

DOC Defendant deviated materially from any DOC COVID-19 mitigation

protocols").  According to Plaintiff's amended complaint, the DOC protocol did

not require vaccination of its staff, just as it did not require vaccination of the

inmates.  Plaintiff has failed to allege that Defendant Beam deviated materially

from the COVID-19 protocols.  Therefore, any Eighth Amendment claims against

her based on her refusal to adopt the PSCOA's request will be dismissed with

prejudice.

### E. Plaintiff's Eighth Amendment Deliberate Indifference Claims Against Medical Defendants for Failing to Treat His COVID-19 Symptoms Will Be Dismissed With Prejudice.

Plaintiff alleges that Defendant Voorstad failed to treat his COVID-19.

(Doc. 26, pp. 44–45.)  However, he also alleges variously that he was told there

was no treatment, he received treatment, and no treatment for his COVID-19

symptoms has provided relief.  (*Id.*, p. 45–46.)

"Prison medical authorities are given considerable latitude in the diagnosis

and treatment of medical problems of inmates and courts will 'disavow any

attempt to second guess the propriety or adequacy of a particular course of

treatment . . . which remains a question of sound professional judgment.'"  *Byrd*,

2010 WL 5889519, at *4 (quoting *Inmates of Allegheny County Jail,* 612 F.2d at

762).  Mere disagreement over proper treatment does not state a claim upon which

relief can be granted.  *White*, 897 F.2d at 110; *Monmouth Cty. Corr. Inst'l Inmates,*

834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference,

have consistently held that mere allegations of malpractice do not raise issues of

constitutional import. . . Nor does mere disagreement as to the proper medical

treatment support a claim of an eighth amendment violation.").

Considering that Plaintiff alleged that he was told no treatment would work

and that he was given some treatment and none of it worked, he cannot succeed in

an Eighth Amendment claim against medical professionals for failing to treat his

COVID-19 symptoms.  This claim will be dismissed with prejudice.

### F.  Any Implied Retaliation Claims Will Be Dismissed Without Prejudice.

Plaintiff states that staff at SCI-Camp Hill retaliated against him for

complaining about the COVID-19 protocols.  (Doc. 26, p. 37.)  While he does not

raise a First Amendment Retaliation claim, any implied claim will be dismissed.

It is well-settled that prison officials may not retaliate against an inmate

because he exercises his right of access to the courts.  *Fantone v. Latini*, 780 F.3d

184, 191 (3d. Cir. 2015).  A prisoner asserting a retaliation claim must allege the

following elements: (1) he engaged in constitutionally protected conduct; (2) he

suffered an adverse action sufficient to deter a person of ordinary firmness from

exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

Here, Plaintiff makes the conclusory statement that "they took retaliatory action against him." (Doc. 26, p. 37.) This alone is insufficient to raise a First Amendment retaliation claim. Therefore, any such claim will be dismissed without prejudice.

### G. Plaintiff's First Amendment Claims Regarding the Implementation of COVID-19 Protocols Will Be Dismissed Without Prejudice.

Plaintiff also alleges that his First Amendment rights were violated by the COVID-19 protocols not allowing him to attend religious ceremonies. (Doc. 26, p. 34.)

Again, Plaintiff failed to allege any personal involvement on the part of any Defendant:

> In regards to not letting unvaccinated inmates participate in religious services at the chapel as imposing . . . a substantial burden on his religious practices and beliefs as a [C]hristain, UM Miller claimed that administrative staff were looking into buying radio receivers to enable unvaccinated inmates to listen to religious services from their cells in real time or live as their being held for vaccinated inmates.

(*Id.*)  While Plaintiff names Defendant R. Miller in this paragraph, he fails to allege that Defendant R. Miller was involved in preventing his access to religious services.  Instead, it appears that Defendant R. Miller was attempting to resolve the issue.  Therefore, this First Amendment claim will be dismissed without prejudice.

## CONCLUSION

Accordingly, Plaintiff's motion to amend will be granted.  The proposed amended complaint will be filed as the amended complaint.  All claims raised in the amended complaint will be dismissed except those alleging that Defendants R. Miller, E. Miller, and Howdyshell deviated from the COVID-19 protocols.  In accord with *Phillips*, the court will grant Plaintiff leave to file a second amended complaint to cure the defects set forth above in the claims dismissed without prejudice.  Any second amended complaint must be clearly label and use the docket number assigned to this case.  Pursuant to Local Rule 15.1, all amended pleadings are to be "complete in itself," meaning Plaintiff must plead all claims he seeks to advance in litigation, including those that survived this screening.  Plaintiff is also cautioned that any second amended complaint must comply with Fed. R. Civ. P. 8.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

**APPENDIX**

| Defendant | Basis of Claim | Page |
|---|---|---|
| John Wetzel | Generic 8th Amendment failure to protect against COVID-19 | 12 |
| | Failed to establish mental health policy for unvaccinated inmates | 54 |
| Tom Wolf | Generic 8th Amendment failure to protect against COVID-19 | 12 |
| | Generic Failure to Protect from Self-Harm | 53 |
| George Little | Generic 8th Amendment failure to protect against COVID-19 | 12 |
| | Generic Failure to protect from self-harm | 53 |
| Laurel R. Harry | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 35 |
| | Refused to refer Plaintiff for transfer for mental health treatment | 60 |
| Michael Gourley | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 35 |
| | Refused to refer Plaintiff for transfer for mental health treatment | 59-60 |
| William Nicklow | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 35 |
| | Generic failure to protect from self-harm | 53 |
| Lindsy Kendall | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 35-36 |

| | | |
|---|---|---|
| | Refused to refer Plaintiff for transfer for mental health treatment | 59-60 |
| Renee Zobitne | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 36 |
| | Generic failure to protect from self-harm | 53 |
| Randy Evans | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 36 |
| | Generic failure to protect from self-harm | 53 |
| Tonya Heist | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 36 |
| | Generic failure to protect from self-harm | 53 |
| Deborah Alvord | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 36 |
| | Generic failure to protect from self-harm | 53 |
| Ross Miller | Use of personal mask worn below nose and mouth | 12, 26 |
| | Claimed to submit work orders regarding toilet and ventilation | 32 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 32-34 |
| | 1st Amendment COVID-19 Policy prevented access to religious ceremonies | 34 |
| | Generic failure to protect from self-harm | 53 |
| | Plaintiff reported suicidal thoughts | 56 |
| | Refused to refer Plaintiff for transfer for mental health treatment | 59 |
| | Failed to make referrals for 1/27/22 IRP | 61 |

| | | |
|---|---|---|
| Erin Miller | Use of personal mask worn below nose and mouth | 12, 26-27 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 35 |
| | Generic failure to protect from self-harm | 53 |
| | Plaintiff reported suicidal thoughts | 56 |
| | Refused to refer Plaintiff for transfer for mental health treatment | 59 |
| | Failed to make referrals for 1/27/22 IRP | 61 |
| Beth Herb | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 36 |
| | Refused Plaintiff's request for private treatment | 58-59 |
| Elicia Stein | Respondent Superior | 29-30 |
| | Did not have a regular post in unvaccinated unit or conduct daily visits | 55 |
| | Refused Plaintiff private mental health treatment | 56 |
| | Plaintiff reported suicidal thoughts | 56 |
| | Had Plaintiff discharged from POC on 1/13/22 | 61 |
| | Failed to make referrals for 1/27/22 IRP | 61 |
| Melissa Howdyshell | Use of personal mask worn below nose and mouth | 12, 27 |
| | Did not have a regular post in unvaccinated unit or conduct daily visits | 55 |
| | Plaintiff reported suicidal thoughts | 56-57 |
| | Failed to make referrals for 1/27/22 IRP | 61 |
| Theodoor Voorstad | Respondent Superior | 12, 29-30 |
| | Refused Plaintiff's request for increased COVID-19 protocols | 36 |
| | Did not treat Plaintiff's COVID-19 symptoms | 44-45 |
| Joe Silva | Respondent Superior | 12, 29-30 |

| | | |
|---|---|---|
| Alison Beam | Refused Pennsylvania State Corrections Officers Association's request to prioritize COVID-19 vaccines for its members | 38 |
| Kevin Wanga | Did not have a regular post in unvaccinated unit or conduct daily visits | 55 |
| | Plaintiff reported suicidal thoughts | 56-57 |
| | Had Plaintiff discharged from POC on 1/13/22 | 61 |
| | Failed to make referrals for 1/27/22 IRP | 61 |
| Emily Boone | Generic failure to protect from self-harm | 53 |