## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD GRAZIANO, | : | Civil No. 1:23-CV-00947 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a motion to dismiss for failure to state a claim filed by

Defendants Deborah L. Alvord, Emily Boone, C.O. Cantando, Randy Evans,

Michael Gourley, Laurel R. Harry, Tonya Heist, Beth Herb, Melissa Howdyshell,

Lindsy M. Kendall, George Little, Erin Miller, Ross Miller, William Nicklow, Joe

Silva, Elicia Stein, John Wetzel, Tom Wolf, and Renee Zobitne (collectively,

"DOC Defendants").[1]  (Doc. 64.)  In his second amended complaint, Plaintiff

Edward Graziano ("Plaintiff") alleges Eighth Amendment deliberate indifference

and First Amendment free exercise of religion claims against DOC Defendants

arising from the time when he was housed at the State Correctional Institution at

---

[1] The only Defendants not contained in this list are Defendants Voorstad, Wanga, and Beam. Defendant Beam was dismissed with prejudice from this action on February 13, 2024, and therefore is not a party.  (Doc. 30.)  Defendant Wanga was dismissed without prejudice to the claims being raised in a separate action.  (Doc. 29, p. 9; Doc. 30.)  Given that these two defendants are named in the Second Amended Complaint despite previously being dismissed under circumstances that prevent Plaintiff from further litigating claims against them in this lawsuit, the court will dismiss these defendants pursuant to the court's screening authority. Defendant Voorstad has not had counsel enter an appearance and is not included in the instant motion to dismiss.

Camp Hill, Pennsylvania ("SCI-Camp Hill").  (Doc. 29.)  For the reasons that follow, the court will grant in part and deny in part DOC Defendants' motion to dismiss.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on June 8, 2023.  (Doc. 1.)  On August 3, 2023, DOC Defendants filed a motion to dismiss.  (Doc. 12.)  On January 25, 2024, Plaintiff filed a motion to amend the complaint.  (Doc. 28.)  On February 13, 2024, the court granted Plaintiff's motion to amend the complaint, and pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court screened the proposed amended complaint attached to the motion.  (Doc. 30.)  The court dismissed with prejudice the claims associated with the timing of the medication line after April 4, 2022, the claims associated with the loss of Plaintiff's single-cell status in September 2022, the Eighth Amendment claims based on the DOC's COVID-19 protocols, the Eighth Amendment claim against Defendant Alison Beam for refusing the PSCOA's request to prioritize vaccines for its members, and the Eighth Amendment claim against medical providers for refusing to treat his COVID-19 symptoms.  (Doc. 30.)  The court dismissed without prejudice the Eighth Amendment claims based on deviations from the enhanced screening for COVID-19 protocols, any implied First Amendment retaliation claims, and the First Amendment claim regarding the free exercise of religion because Plaintiff

failed to plead the personal involvement of named Defendants. (*Id.*) The court did not dismiss the Eighth Amendment claims against Defendants R. Miller, E. Miller, and Howdyshell based on deviations from COVID-19 protocols. (*Id.*) The court also gave Plaintiff leave to file an amended complaint. (*Id.*)

The amended complaint names the following twenty-two (22) defendants: (1) John Wetzel ("Wetzel"), former Secretary of the DOC; (3) George Little ("Little"), former Acting Secretary of the DOC; (4) Laurel R. Harry ("Harry"), current Secretary of the DOC and at all relevant times the superintendent/Facility Manager at SCI-Camp Hill; (5) Michael Gourley ("Gourley"), Deputy Superintendent for Facility Management at SCI-Camp Hill; (6) William Nicklow ("Nicklow"), Deputy Superintendent for Centralized Services at SCI-Camp Hill; (7) Lindsy Kendall ("Kendall"), Deputy Superintendent for Diagnostic Services at SCI-Camp Hill; (8) Renee Zobitne ("Zobitne"), Major of the Unit Managers at SCI-Camp Hill; (9) Randy Evans ("Evans"), Major of the Guards at SCI-Camp Hill; (10) Tonya Heist ("Heist"), Corrections Superintendent Assistant at SCI-Camp Hill; (11) Deborah Alvord ("Alvord") Corrections Superintendent Assistant at SCI-Camp Hill; (12) Ross Miller ("R. Miller"), Unit Manager of I-Block (the "unvaccinated unit") at SCI-Camp Hill; (13) Erin Miller ("E. Miller"), Corrections Counselor at SCI-Camp Hill; (14) Beth Herb ("Herb"), Corrections Health Care Administrator at SCI-Camp Hill; (15) Elicia Stein ("Stein"), Licensed Psychologist

Manager at SCI-Camp Hill; (16) Melissa Howdyshell ("Howdyshell"), Psychology

Service Specialist at SCI-Camp Hill; (17) Theodoor Voorstad, ("Voorstad"), a

medical provider contracted with Wellpath at SCI-Camp Hill; (18) Joe Silva

("Silva"), Director of Bureau of Health Care Services of the DOC; (19) Kevin

Wanga ("Wanga"), Registered Nurse Practitioner at SCI-Camp Hill; (20) Emily

Boone ("Boone"), Psychology Services Specialist at SCI-Camp Hill; (21) Alison

Beam ("Beam"), Acting Secretary of the Department of Health of Pennsylvania;

and (22) Tom Wolf ("Wolf"), former Governor of Pennsylvania.  (Doc. 54, ¶¶ 4–

24.)

Regarding his Eighth Amendment claims, Plaintiff avers that he arrived at

SCI-Camp Hill on July 1, 2021, and was housed in the Restricted Housing Unit for

COVID-19 quarantine.  (*Id.* ¶ 29.)  On July 12, 2021, Plaintiff entered general

population.  (*Id.*)  In August of 2021, Defendant Wetzel directed all State

Correctional Institutions to house unvaccinated inmates separately from vaccinated

inmates. (*Id.* ¶ 31.)  Plaintiff was not vaccinated.  (*Id.* ¶ 25.)  Plaintiff was informed

that unvaccinated inmates would be separated from vaccinated inmates and housed

in a designated housing unit.  (*Id*. ¶ 30.)  Additionally, Plaintiff was informed that

unvaccinated inmates would be restricted from all communal areas outside the

unvaccinated unit including medical, chapel, school, library, law library, visiting

room, gymnasium, barber shop, dining hall, and main yard.  (*Id.*)

On August 6, 2021, Plaintiff was moved to the unvaccinated unit, which was on the B-side of I-Block ("I/B"). (*Id.* ¶ 32.) Plaintiff alleges that I-Block's management team included Defendants R. Miller, E. Miller, and Howdyshell. (*Id.* ¶ 33.) Plaintiff alleges that R. Miller, E. Miller, and Howdyshell regularly had contact with all inmates, regardless of the inmates' vaccination status and they regularly wore their face masks below their mouths when having direct contact with Plaintiff. (*Id.* ¶¶ 34–39.) When confronted by Plaintiff about their inappropriate masking, R. Miller, E. Miller, and Howdyshell would tell Plaintiff "Don't worry about it, I'm vaccinated," "Fuck off," or tell Plaintiff to get vaccinated if he was worried about it. (*Id.*) Plaintiff further alleges that corrections officers on I/B did not correctly wear their masks, other staff who worked on I/B did not wear full personal protective equipment (PPE), and inmates housed on I/B did not wear masks, in contravention of protocols in place by the DOC at the time. (*Id.* ¶¶ 40–44.)

Plaintiff alleges that R. Miller hired block workers from different cohort groups, and these workers intermingled with each other and staff, undermining the COVID protocols. (*Id.* ¶ 44.) Additionally, Plaintiff alleges that Miller, Stein, and other unnamed supervisory officials allowed inmates from the vaccinated block to work on the unvaccinated side, commingling with the unvaccinated inmates. (*Id.* ¶ 45.) Plaintiff alleges further violations of DOC's COVID protocol, including using

reusable meal trays which were shared between vaccinated and unvaccinated inmates and using the same telephones between the blocks without properly sanitizing them.  (*Id.* ¶¶ 46, 47.)  Plaintiff alleges issues with the ventilation system, plumbing system, and lack of window coverings to prevent the spread of COVID-19, as well as mold on the windows.  (*Id.* ¶ 48–53.)

Plaintiff alleges he repeatedly brought these issues to Defendant R. Miller, who dismissed Plaintiff's complaints, told Plaintiff to get vaccinated if he was concerned about contracting COVID-19, informed Plaintiff that the comingling of various groups of inmates was pursuant to the protocols in place, the meal trays were safe because they had been machine washed, and informed Plaintiff to submit a maintenance request for the issues with ventilation and plumbing.  (*Id.* ¶¶ 54–66.)  Plaintiff also documents the dates he personally complained about his various issues to both R. Miller and E. Miller.  (*Id.* ¶¶ 67, 68.)  Plaintiff avers that he spoke personally with Defendants Harry, Nicklow, Gourley, Heist, and Kendall about his various complaints.  (*Id.* ¶¶70–73.)  These individuals generally informed Plaintiff they would look into the issues he raised.  (*Id.*)

Plaintiff alleges that on September 22, 2021, C.O. Cantando informed Plaintiff that he and other guards purchased fake COVID-19 vaccination cards in order to circumvent mandatory vaccination or testing requirements.  (*Id.* ¶ 74.)  Plaintiff alleges that he personally told Harry and Gourley about Cantando's fake

vaccination card, and Harry and Gourley informed Plaintiff they would investigate the issue.  (*Id.*¶ 75.)

Plaintiff alleges that, at the end of December 2021, he began to experience symptoms of COVID-19.  (*Id.* ¶ 79.)  Plaintiff alleges that he was seen by Defendant Voorstad in a "cell-side" appointment; however, Voorstad refused to treat Plaintiff because Plaintiff insisted to be seen in private.  (*Id*. ¶ 79.)  Plaintiff alleges that on January 4, 2022, he complained to Heist that he was being denied treatment and testing, and Heist promised Plaintiff he would be seen by medical staff.  (*Id.* ¶ 80.)  The next day, Plaintiff submitted a sick call request for COVID-19 symptoms.  (*Id.* ¶ 81.)  Plaintiff was eventually tested for COVID-19 on January 10, 2022.  His test came back positive, as well as approximately thirty (30) other unvaccinated inmates, who were all moved to G-Block.  (*Id.* ¶¶ 82, 83.)  Plaintiff alleges that the positive test results caused him to become suicidal and self-harm.  (*Id.* ¶ 84.)  Plaintiff and the other unvaccinated inmates who were on G-Block were returned to I/B on January 25, 2022.  (*Id.* ¶ 85.)  Plaintiff alleges he was told there is no treatment to help him regain his sense of smell, and the medications prescribed to treat his lingering symptoms have not worked.  (*Id.* ¶¶ 86, 87.)

Plaintiff alleges that DOC Defendants' failure to abide by the DOC COVID-19 protocols caused the COVID-19 outbreak that infected him with COVID-19.  (*Id.* ¶ 92.)  Plaintiff avers that DOC Defendants "knew that [the unvaccinated

inmates] unvaccinated status placed them at higher risk of COVID-19 exposure as the decision to separate them makes clear." (*Id.* ¶ 94.) Plaintiff also alleges that Defendants knew he was a higher risk of COVID due to his age and chronic medical conditions. (*Id.*)

Plaintiff avers the following regarding his religious freedom claims. Plaintiff alleges that Wetzel, Little, Harry, Gourley, and Nicklow did not allow Plaintiff and other unvaccinated inmates to go to the prison's chapel, participate in religious services, or receive in-person visits from spiritual advisors. (*Id.* ¶ 97.) Wetzel, Little, Harry, Gourley, and Nicklow were permitting vaccinated inmates to go to the chapel, participate in religious services, and receive in person visits from spiritual advisors. (*Id.* ¶ 98.) Plaintiff further avers that he could not watch videos pre-recorded by prison chaplains because he did not purchase cable TV service, or the videos appeared frozen and without sound. (*Id.* ¶¶ 99–101.) Plaintiff asked Defendant Alvord about religious accommodations, and Alvord directed him to Defendant Miller. (*Id.* ¶ 103.) Plaintiff also discussed the issue of the frozen video with Defendant Harry, who promised to inform activity staff who were responsible for the video equipment. (*Id* ¶¶ 103–06.) Plaintiff also informed Defendants Kendall and Heist of the technical issues, and Kendall and Heist informed Plaintiff that SCI-Camp Hill was purchasing radio receivers. (*Id.* ¶ 107.) Plaintiff discussed the in-person visits issue with Harry, and Harry informed Plaintiff that

only vaccinated individuals were permitted in-person visits and additionally
informed Plaintiff she was unaware of radio receivers being purchased.  (*Id.* ¶
109.)  Plaintiff also avers he approached Nicklow about religious accommodations
and Nicklow echoed Harry and verified radio receivers were being ordered.  (*Id.* ¶¶
114, 115.)

Plaintiff brings one count styled Due Process/Eighth Amendment deliberate
indifference to known risk of COVID-19 against Defendants Wetzel, Little, Wolf,
Harry, Gourley, Heist, Nicklow, Kendall, Alvord, Herb, Voorstad, Evans, Zobitne,
R. Miller, Howdyshell, E. Miller, Stein, Silva, C.O. Cantando, and Beam.  (*Id.* ¶¶
119–23.)  Plaintiff also brings one count styled First/Fourteenth Amendment
violations of free exercise of religion against Defendants Wetzel, Little, Harry,
Gourley, Nicklow, Kendall, Alvord, Heist, and R. Miller.  (*Id.* ¶¶ 12427.)

On August 30, 2024, DOC Defendants filed the instant motion to dismiss
and brief in support.  (Docs. 64, 65.)  Plaintiff filed a brief in opposition on
November 25, 2024.  (Doc. 74.)  Accordingly, the motion to dismiss is ripe and
ready for disposition.

### JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §
1331, which allows a district court to exercise subject matter jurisdiction in civil
cases arising under the Constitution, laws, or treaties of the United States.  Venue

is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Camp-Hill, in Cumberland County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which

11

affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

DOC Defendants first argue that Plaintiff has not established the personal involvement of Wetzel, Little, Wolf, Harry, Gourley, Heist, Nicklow, Kendall, Alvord, Herb, Evans, Zobitne, R. Miller, Howdyshell, Boone, E. Miller, Stein, or Silva in the alleged constitutional violations.  (Doc. 65, pp. 6–10.)  Second, DOC Defendants argue that Plaintiff has not stated a claim for relief under the Eighth Amendment because he has failed to establish the objective and subjective components of an Eighth Amendment claim.  (*Id.* at 6–14.)  Third, DOC Defendants argue Plaintiff has failed to state a claim for relief under the First Amendment because restrictions on in-person worship were reasonably related to a legitimate penological interest of inmate safety.  (*Id.* at 14, 15.)  Finally, DOC Defendants argue that all claims for monetary damages against DOC Defendants in their official capacities should be dismissed pursuant to the Eleventh Amendment. (*Id.* at 10.)  The court will address each argument in turn.

### A. Personal Involvement

DOC Defendants argue Boone should be dismissed because there are no allegations against her in the amended complaint and Wolf should be dismissed

because simply being "responsible for governing the Commonwealth" does not establish personal involvement. (Doc. 65, p. 7.)[2] DOC Defendants further argue that Wetzel, Little, Harry, Gourley, Nicklow, Kendall, Zobitne, Silva, Evans, Herb, and Stein should be dismissed because the allegations against them are premised on their roles as supervisors and the allegations fail to plead a theory of supervisory liability. (*Id.* at 8.) Finally, Defendants argue that "Graziano's bald assertions that he advised the Defendants of his various concerns, fail to establish their personal involvement in the underlying alleged unconstitutional conduct relative to either the First or Eighth Amendment claims." (*Id.* at 9.)

Plaintiff argues that the amended complaint contains allegations of personal involvement of R. Miller, E. Miller, and Howdyshell. (Doc. 73, p. 12.) Plaintiff also argues that personal involvement on the part of Harry, Gourley, Nicklow, Kendall, Zobitne, Evans, and Stein is sufficiently alleged because there are allegations that Plaintiff repeatedly complained of the deviations by R. Miller, E. Miller, and Howdyshell, as well as allegations that these Defendants witnessed the deviations. (*Id.* at 14.) Plaintiff argues that Harry, Gourley, Nicklow, Kendall, Zobitne, Evans, and Stein were policymakers who "dictated through local policy how the unvaccinated unit (I/B) and proof of vaccination at SCI-Camp Hill operated within the DOC'S state-wide COVID-19 protocols, and daily updates."

---

[2] For ease of reference, the court uses the page numbers contained in the CM/ECF header.

(*Id.*)  Finally, Plaintiff argues Wetzel and Little had personal involvement because they were responsible for the implementation of the Governor's vaccine or test mandate.  (*Id.* at 15.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).  Here, by not alleging any action on the part of Defendants Herb, Evans, Zobitne, Boone, and Silva, Plaintiff has not established personal involvement as required under *Baraka*.  Accordingly, Defendants Herb, Evans, Zobitne, Boone, and Silva will be dismissed with prejudice.  Additionally, there are no allegations regarding Defendant Alvord in the context of the Eighth Amendment claim.  Therefore, Defendant Alvord will be dismissed with prejudice from the Eighth Amendment claim for lack of personal involvement.

Any implied liability based on Defendants Wetzel and Little's position as Secretary of DOC or Defendant Wolf's position as Governor will also not succeed

14

based on the facts as alleged. Supervisory liability under § 1983 utilizes the same standard as municipal liability. *See Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999). A supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights. *See id. at* 357. To establish supervisory liability, a plaintiff must show that (1) a superior officer failed to employ a specific supervisory practice; (2) the existing custom created an unreasonable risk of injury in the absence of the specified supervisory practice; (3) the supervisor was aware that the risk existed; (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the failure to employ the supervisory practice. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2005) (*citing Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). The facts set forth by Plaintiff do not address any of the factors required to establish supervisory liability. Therefore, all claims against Defendants Wetzel, Little, and Wolf will be dismissed with prejudice for lack of personal involvement.

Additionally, the only allegations against Defendant Stein are based on her supervisory position over inmate peer specialists who resided on the vaccinated side of the unit. (Doc. 54, ¶ 45.) Plaintiff does not allege any factors establishing supervisory liability on the part of Defendant Stein. Accordingly, she will be dismissed with prejudice for lack of personal involvement.

The bulk of Plaintiff's Eighth Amendment claim that Defendants deviated from DOC protocols focuses on the actions of R. Miller, E. Miller, and Howdyshell. Accordingly, these Defendants will not be dismissed for lack of personal involvement.

The remaining Defendants are Harry, Gourley, Nicklow, Kendall, Heist and Alvord.[3] Plaintiff alleges these individuals are supervisors and that he complained to them about the underlying circumstances of his claims. "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement." *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). However, "several courts have concluded that a supervisory official may be held liable stemming from the review of a grievance alleging an ongoing violation because the official 'is personally involved in that violation because he is

---

[3] As previously noted, the only allegations of personal involvement of Alvord are for the First Amendment claim.

confronted with a situation he can remedy directly.'"  *Wilkins v. Wolf*, No. 1:20-CV-2450, 2021 WL 1578250, at *5 (M.D. Pa. Apr. 22, 2021)(collecting cases).

With respect to Harry, Plaintiff alleges Harry was the Superintendent of SCI-Camp Hill and was "responsible for overseeing all aspects of the prison, including the medical care and safety of inmates[.]"  (Doc. 54, ¶ 6.)  Plaintiff also pleads that he spoke with Harry personally multiple times about the factual basis of both his Eighth Amendment and First Amendment claims.  (*Id.* ¶¶ 70, 77, 104.) This is sufficient to plead personal involvement on behalf of Harry with respect to the Eighth Amendment and First Amendment claims.

Defendant Gourley was the Deputy Superintendent for Facility Management and was "responsible for uniform corrections officers, unit management (housing), counseling services, facility maintenance, facility safety and the prison's Security Office."  (*Id.* ¶ 7.)  Plaintiff alleges he spoke with Gourley multiple times about the factual basis of his Eighth Amendment claim.  (*Id.* ¶¶ 72, 77.)  This is sufficient to plead personal involvement of Defendant Gourley on the Eighth Amendment claim.

Defendant Nicklow was the Deputy Superintendent for Centralized Services and was "responsible for coordinating efforts between the facility and the Medical Department, including joint responsibility with the Bureau of Health Care Services."  (*Id.* ¶8.)  Plaintiff alleges he spoke with Nicklow several times about

the factual basis of both of his claims.  (*Id.* ¶¶ 71, 77, 114.)  This is sufficient to plead personal involvement of Defendant Nicklow for both claims.

Defendant Kendall was the Deputy Superintendent for Diagnostic Services and was "responsible for implementing all policies/practices/procedures related to the assessment of custody, security levels[,] programmatic and special needs of inmates who are newly received[ ]" into SCI-Camp Hill.  (*Id.* ¶ 9.)  Plaintiff alleges he spoke with Kendall multiple times about the factual basis of both his Eighth Amendment and First Amendment claims.  (*Id.* ¶ 73, 77, 104.)  This is sufficient to plead personal involvement on both claims.

Defendant Heist and Alvord were both the Superintendent's Assistants responsible for assisting Superintendent.  (*Id.* ¶¶ 12, 13.)  Plaintiff alleges he spoke with Heist about his Eighth Amendment claim and with Alvord regarding his First Amendment claim.  (*Id.* ¶¶ 73, 77, 102.)  The allegations against Heist and Alvord fail to plead personal involvement because there are insufficient allegations that Heist or Alvord had the ability to directly remedy the situation Plaintiff complained about from their positions as Superintendent's Assistants.  Accordingly, both Heist and Alvord will be dismissed with prejudice.

Thus, the following claims remain pending against the following defendants at this point in the analysis.  The Eighth Amendment claim is against Defendants

R. Miller, E. Miller, Howdyshell, Harry, Gourley, Nicklow, and Kendall.  The First Amendment claim remains pending against Harry, Nicklow, and Kendall.

### B. Eighth Amendment Claim

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII.  "A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  The Supreme Court has found that an Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Id.*  Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 (3d Cir. 2001).  This deliberate indifference standard "is a subjective standard under *Farmer*-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.*  Thus, "[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety." *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) (emphasis added).

It is now well established that an inmate's claim based on exposure to COVID-19 will fail as a matter of law where the record shows that the state

correctional institution followed DOC policies.  *See e.g., Engelund v. Doll*, 2020 WL 1974389, at * 11 (M.D. Pa. Apr. 24, 2020); *Allen v. Wetzel*, 2021 WL 2254997, at *7 (M.D. Pa. June 3, 2021); *Bevins v. Kauffman*, 2021 WL 322168, at *1, 5 (M.D. Pa. Feb. 1, 2021).  However, the Court of Appeals for the Third Circuit has found that a plaintiff adequately alleged an Eighth Amendment deliberate indifference claim when he alleged that officials ignored "protocols by maintaining open-dormitory housing and four-man cells, and by 'interchanging' inmates from different blocks and jails."  *White v. Wetzel*, 2022 WL 3273807, at * 2 (3d Cir. 2022).

In *White*, the plaintiff also alleged that the supervisors had "acknowledged to [plaintiff] that the conditions in G-Block were dangerous but did nothing to improve them."  *Id.*  Therefore, "an inmate's Eighth Amendment claim arising out of his contracting COVID-19 will fail as a matter of law based on the DOC's COVID-19 mitigation policies and procedures absent factual allegations that prison officials disregarded or materially deviated from them."  *Caesar v. Kemp*, 2024 WL 842169, at * 3 (W.D. Pa. Jan. 29, 2024), report and recommendation adopted sub nom. *Caesar v. Kemp*, 2024 WL 839061 (W.D. Pa. Feb. 27, 2024) (citing *Williams v. PA. Dep't of Corr.*, 2023 WL 2655406, at *13 (W.D. Pa. Feb. 2, 2023), report and recommendation adopted sub nom. *Williams v. PA Dep't of Corr.*, 2023 WL 2652298 (W.D. Pa. Mar. 27, 2023)).

DOC Defendants first argue that "[t]he DOC's response to the COVID pandemic, has been deemed reasonable by various courts in this Circuit." (Doc. 65, p. 12.) They further argue that Plaintiff has "fail[ed] to plausibly allege that any of the Defendants acted with deliberate indifference to [the] risk [of COVID] generally, let alone to any specific risk." (*Id.* at 13.) Further, Defendants argue, Plaintiff has failed to "demonstrate[ ] that Defendants had any reason to believe the measures employed by the DOC, or within the institution, were inadequate." (*Id.*) Defendants also argue that Plaintiff's assertions that Defendants deviated from the protocol are not sufficient to meet the subjective prong because "R. Miller expressly disagreed with Graziano's assertions that any of his actions undermined the protocols and indicated his belief that the vaccinated staff and inmate workers did not pose a risk to Graziano." (*Id.* at 14.) Further, Defendants argue that when faced with Plaintiff's complaints, "R. Miller, Harry, Gourley, Nicklow, Kendall and Heist expressed their belief that the 'existing COVID-19 protocols were sufficient.'" (*Id.*)

Plaintiff first notes that courts have taken judicial notice of the DOC's various COVID protocols and argues that "there is no question that Defendants were aware of the existing DOC COVID-19 protocols during the relevant time frame, and understood the potential risk of serious harm to Graziano/unvaccinated inmates through exposure to COVID-19, if they disregarded or materially deviated

from those existing protocols." (Doc. 73, pp. 22, 23.) Plaintiff then reiterates his allegations outlining material deviations from COVID protocols and argues that "a jury may infer the existence of Defendants' subjective state of mind from the fact that the risk of harm posed by their deviations/noncompliance with COVID protocols, was obvious, and known." (*Id.* at 27.)

Although DOC Defendants dispute the objective prong, many courts have held that, objectively, COVID-19 posed a serious risk of harm to inmates. *See Bevins*, 2021 WL 322168, at * 5. Plaintiff accordingly meets this prong.

Turning to the subjective prong, at this stage of litigation, the court finds that the allegations are similar to *White* and therefore, state a deliberate indifference claim under the Eighth Amendment. Plaintiff has alleged that Defendants R. Miller, E. Miller, and Howdyshell deviated from the DOC protocols in place, he made them all aware that he believed they were deviating from the protocols, and that Harry, Gourley, Nicklow, and Kendall were aware of these deviations yet did not act to remedy the ongoing deviations. Accordingly, the motion to dismiss will be denied as to the Eighth Amendment claim against R. Miller, E. Miller, Howdyshell, Harry, Gourley, Nicklow, and Kendall.

### C. First Amendment Claim

To establish a violation of the Free Exercise Clause of the First Amendment, a prisoner must plead facts that plausibly show or allow the inference that the

defendants' action, or a prison policy, has placed a restriction on his religious

practice that is not reasonably related to a legitimate, penological interest. *O'Lone*

*v. Estate of Shabazz*, 482 U.S. 342, 349-350 (1987); *Turner v. Safley*, 482 U.S. 78,

89 (1987). Defendants must then identify a legitimate penological interest. If a

legitimate penological interest exists, the court must then consider four factors to

determine the reasonableness of Defendants' actions or challenged prison

regulation: (1) whether there is "a valid, rational connection" between the prison

regulation and the governmental interest; (2) whether the inmate has an

"alternative means of exercising the right" at issue; (3) the burden or impact the

accommodation would impose on prison resources, correctional staff and inmates;

and (4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-91. The most

important prong of the *Turner* analysis requires a rational connection between the

policy and the legitimate governmental interest that justifies it. *Nasir v. Morgan*,

350 F.3d 366, 372 (3d Cir. 2003). With that said, courts should accord prison

officials broad deference in the adoption of policies and practices that are needed

to preserve internal order and discipline in the prison. *See Bell v. Wolfish*, 441 U.S.

520, 547–48 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

    DOC Defendants argue that the "the restrictions imposed by Defendants in

response to COVID" did not infringe Plaintiff's right to worship in congregational

prayer because "the DOC's response to the pandemic was reasonable and

rationally connected to the goal of ensuring the safety of the inmates and staff within its institutions." (Doc. 65, p. 15.) DOC Defendants outline that "the DOC's demobilization plan addressed the provision of religious services–including delivering religious services on housing units, broadcasting services on the inmate channel, and ultimately resuming chap services with cohort and social distancing limitations in place." (*Id.*)

Plaintiff argues that, as a result of the demobilization plan, "Graziano/unvaccinated inmates were excluded from chapel services/in-person visits with spiritual advisors, and denied access to the religious videos broadcast on the inmate channel by discontinuance of free cable services, because the inmate channel was accessible only through paid cable service." (Doc. 73, p. 30.)

Here, Plaintiff has alleged that Defendants instituted a policy that substantially burdened his ability to gather in-person for worship, receive religious teaching, and meet with spiritual advisors because the policy completely restricted all of these activities. Defendants have argued that the restriction on in-person religious meetings was for the purpose of ensuring the safety of inmates and staff. The court concludes that the remaining rational basis review is better suited for summary judgment. At the pleading stage, sufficient facts have been alleged to state a First Amendment free exercise claim. Accordingly, the court will deny the

motion to dismiss relating to the First Amendment claim against Harry, Nicklow, and Kendall.

### D. Eleventh Amendment Immunity

DOC Defendants argue that 'all claims against Defendants in their official capacities for money damages must be dismissed[ ]" because a suit against an individual acting in their official capacity is an impermissible suit against a state and the Commonwealth of Pennsylvania has not consented to suit in federal court for these types of claims. (Doc. 65, p. 10.)

A suit for monetary damages brought against a state official in their official capacity is not a suit against that official; it is a suit against that official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *Allen v. New Jersey State Police*, 974 F.3d 497, 506 (3d Cir. 2020). This is no different from a suit against the State itself, which is barred by the Eleventh Amendment. *See Will*, 491 U.S. at 66, 70-71; *Pennhurst State School & Hops. v. Halderman*, 465 U.S. 89, 98-99 (1984) (explaining that the Eleventh Amendment bars suits against a State in federal court). There are, however, two exceptions to Eleventh Amendment immunity where: (1) the State has waived its immunity; or (2) Congress has exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Will*, 491 U.S. at 66; *Kentucky v.*

*Graham*, 473 U.S. 159, 169 (1985) (recognizing these two exceptions to a State's Eleventh Amendment immunity).

The court finds that neither one of these exceptions apply here. As explained by the Third Circuit, the Commonwealth of "Pennsylvania has not waived its sovereign immunity defense in federal court[,]" and "Congress did not abrogate Eleventh Amendment immunity via § 1983[.]" *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citation omitted); *see also* 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) (stating that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (concluding that the history and language of § 1983 establish that Congress did not intend to make the States liable under that statute).

Of the defendants remaining at this point, only Defendant Harry is sued in both her individual and official capacity. Accordingly, the court concludes that Plaintiff's Eighth Amendment claim for monetary damages against Defendant Harry in her official capacity is barred by Eleventh Amendment immunity. As such, the Eighth Amendment claim for monetary damages against Defendant Harry is dismissed with prejudice.

## CONCLUSION

Accordingly, Defendants' motion will be granted in part and denied in part. Defendants' motion is granted with respect to Defendants Wetzel, Little, Wolf, Heist, Alvord, Herb, Evans, Zobitne, Boone, Stein, and Silva. These Defendants will be dismissed with prejudice. The motion is denied with respect to the Eighth Amendment claim against Harry, Gourley, Nicklow, Kendall, R. Miller, E. Miller, and Howdyshell and the First Amendment claim against Harry, Nicklow, and Kendall. The court will not grant Plaintiff an opportunity to amend his complaint, as further amendments would be futile. *See Phillips*, 515 F.3d at 245. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 5, 2025